# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL R. HARRISON,    )
    )
        Plaintiff,    )
    )
        v.    )    **Case No. CIV-18-163-SPS**
    )
ANDREW M. SAUL,    )
Commissioner of the Social    )
Security Administration, [1]    )
    )
        Defendant.    )

## OPINION AND ORDER

The claimant Michael R. Harrison requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the most recent administrative hearing (Tr. 124, 549). He has a high school education and has worked as supervisor/laborer (Tr. 25).  The claimant alleges that he has been unable to work since August 20, 2012, due to chronic sinusitis, allergic rhinitis, hearing problems, sleep disorder, and ankle and foot problems (Tr. 623).

## Procedural History

On August 27, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 549-55).  His application was denied.  ALJ Daniel Curran conducted an administrative hearing and a supplemental hearing and determined that the claimant was not disabled in a written opinion dated June 8, 2016 (Tr. 181-91).  The Appeals Council remanded the case on July 25, 2016 (Tr. 198-201).  On remand, ALJ Daniel Curran conducted an administrative hearing and a supplemental hearing and again determined that the claimant was not disabled in a written opinion dated December 1, 2017 (Tr. 15-27).  The Appeals Council denied review, so the ALJ's December 2017 written opinion represents the Commissioners' final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), in an indoors, environmentally controlled setting (Tr. 23). Due to psychologically-based limitations, the ALJ found the claimant could understand, remember, and carry out simple instructions; make judgments that were commensurate with the functions of unskilled work, *i. e.,* simple work-related decisions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting; but could not do work that required joint decision-making or teamwork, and could not have more than occasional contact with members of the public (Tr. 23). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, merchandise marker, office helper, and pencil sorter (Tr. 25-26).

**Review**

The claimant contends that the ALJ erred by failing to: (i) properly analyze the consultative opinions of Dr. Raymond Fuchs and Dr. Michael Stephens, and (ii) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupation Titles ("DOT"). The Court agrees that the ALJ erred in evaluating Dr. Stephens' opinion; therefore the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of major depressive disorder, history of alcohol dependence, insomnia, hyperlipidemia, chronic sinusitis, joint pain, and pes planus (Tr. 17-18). The relevant medical evidence as to the claimant's mental impairments reveals that the claimant presented to nurse practitioner Sandra Bollier on May 21, 2010, and reported problems with anger, irritability, low mood, and insomnia after his home sustained significant damage from a tornado earlier that week (Tr. 1200). Ms. Bollier diagnosed the claimant with stress, insomnia, and depressive symptoms (Tr. 1203). At a follow-up appointment in August 2010, the claimant reported that he stopped taking his psychotropic medications because his mood significantly improved, and he denied any problems (Tr. 1196).

The claimant established care with Dr. Aashish Parikh, a psychologist, on September 5, 2013 (Tr. 808-10). Dr. Parikh's mental status exam was normal despite a depressed mood and blunted affect, and he diagnosed the claimant with major depressive disorder and alcohol use disorder (Tr. 809). At a follow-up appointment in October 2013, the claimant reported that did not feel depressed, sad, or hopeless, but had been isolative (Tr. 789). Dr. Parikh's mental status examination was normal and he determined that the claimant did not need psychiatric medication at that time (Tr. 790). The claimant returned to Dr. Parikh in August 2014 and reported poor motivation and energy, depression, and occasional hopelessness, and Dr. Parikh's mental status examination was essentially normal (Tr. 925). By October 2014, the claimant was feeling less irritable and his anxiety level was decreased (Tr. 920). The record contains no further mental health related

treatment notes, but the claimant reported his depression was well-controlled at an annual exam in December 2016 (Tr. 2512-17).

On March 24, 2015, Dr. Stephen evaluated the claimant for possible posttraumatic stress disorder ("PTSD") in connection with his application for VA disability benefits (Tr. 937-41). Dr. Stephen found the claimant appeared anxious and mildly suspicious, and had somewhat pressured speech, moderately clouded consciousness, some difficulty with memory, fair judgment, and no insight as to the nature of his difficulties (Tr. 939). He estimated the claimant's intelligence was average at best (Tr. 939). Dr. Stephen diagnosed the claimant with PTSD and polysubstance abuse in partial remission and opined that the claimant had "at least occupational and social impairment with reduced reliability and productivity…" (Tr. 940).

Dr. Fuchs evaluated the claimant in connection with his application for VA disability benefits in March 2016 (Tr. 2479-91). He observed the claimant appeared restless, his attention switched rapidly from topic to topic, his speech was pressured and often delivered rapidly in short bursts with limited complexity, and he seemed extra cautious about how he posed his responses (Tr. 2484). Dr. Fuchs administered the Wechsler Memory Scale, Trail Making Test, Rey's Test, Minnesota Multiphasic Personality Inventory, Milon Clinical Multiaxial Inventory, and Milon Behavioral Medicine Diagnostic (Tr. 2484-91). Dr. Fuchs found the claimant was markedly restricted in his activities of daily living, moderately limited in his ability to maintain social functioning, and frequently experienced deficiencies of concentration, persistence, or pace that resulted in failure to complete tasks in a timely manner (Tr. 2482). He diagnosed the

claimant with PTSD, persistent depressive disorder (severe), and social anxiety (mild to moderate) (Tr. 2491). Dr. Fuchs found the claimant could remember, comprehend, and carry out simple to moderately complex instructions on an independent basis, but would eventually deteriorate into eccentric patterns and resistance towards input and feedback (Tr. 2491). He indicated the claimant's overall work capacity was seventy percent, and that he could be expected to function reasonably acceptable three out of five days at a job demanding significantly reduced task demand, stress, changes, or complexity, for reduced time periods, *i. e.,* shifts shorter than six and one-half hour days (Tr. 2491).

On September 22, 2014, state agency psychologist Laura Lochner, Ph.D., completed a mental RFC assessment and found that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public (Tr. 159-60). Dr. Lochner explained that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 160). Dr. Lochner's findings were affirmed on review (Tr. 173-75).

At the first administrative hearing, the claimant testified that he was unable to work because he did not like being around people (Tr. 45). He stated that he is treated at the VA for anxiety, depression, and PTSD, and that his symptoms have improved with medication (Tr. 46, 49). Regarding his depression, the claimant stated it causes him to "really just want to sit down" and not be outgoing (Tr. 51). As to his anxiety, the claimant stated if he did not have to do anything it was "pretty good," but that going to work would cause anxiety (Tr. 51-52).

The ALJ called Dr. Beth Ann Maxwell, a board-certified psychiatrist, to testify as a medical expert at both supplemental hearings (Tr. 82-88, 124-33, 2473-74). Dr. Maxwell testified that the claimant was treated at the VA for depression and alcohol abuse and would start medications and then stop taking them (Tr. 84). She stated that consultative examiners diagnosed the claimant with PTSD, but the claimant's treating physicians did not, and he was never treated for PTSD (Tr. 84, 130). She concluded the claimant did not meet or equal Listing 12.04 or 12.09, had moderate "B" criteria limitations, did not meet the "C" criteria, and that Listing 12.06 was not applicable because the claimant was not treated for anxiety (Tr. 85-86, 129). Dr. Maxwell found the claimant was mildly limited in his activities of daily living, and moderately limited in his social functioning and ability to maintain concentration, persistence, or pace (Tr. 85).

At the second administrative hearing in 2017, the claimant testified that he was drinking less and that his symptoms were about the same as they were at the first administrative hearing (Tr. 116-18). The ALJ also called Dr. Fuchs to testify (Tr. 103-15). Dr. Fuchs testified that the claimant was markedly limited in his activities of daily living, ability to adapt or manage himself, and ability to interact with others; and was moderately limited in his ability to maintain social functioning; concentrate, persist, or maintain pace; and understand, remember, and apply information (Tr. 106-08).

In his written opinion, the ALJ summarized the hearing testimony and the medical records. In discussing the opinion evidence, he gave Dr. Fuchs' consultative opinions limited weight, finding they were principally derived from the claimant's subjective reports and were inconsistent with the remainder of the medical evidence in the record, specifically

the records showing no treatment for PTSD or schizoid personality disorder (Tr. 25).  The

ALJ assigned Dr. Stephen's Global Assessment of Functioning ("GAF") score limited

weight because it was a single rating by an examining provider but provided no further

analysis as to the rest of the substance of his opinion (Tr. 19, 25).  He then gave Dr.

Maxwell's expert testimony significant weight because her testimony was supported by

and consistent with the medical evidence (Tr. 25).  Similarly, the ALJ gave the state agency

psychologists' opinions considerable weight because their assessments were well

supported (Tr. 25).

"An ALJ must evaluate every medical opinion in the record, although the weight

given each opinion will vary according to the relationship between the disability claimant

and the medical professional. . . . An ALJ must also consider a series of specific factors in

determining what weight to give any medical opinion."  *Hamlin v. Barnhart*, 365 F.3d

1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health &*

*Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).  The pertinent factors include the

following: (i) the length of the treatment relationship and the frequency of examination;

(ii) the nature and extent of the treatment relationship, including the treatment provided

and the kind of examination or testing performed; (iii) the degree to which the physician's

opinion is supported by relevant evidence; (iv) consistency between the opinion and the

record as a whole; (v) whether or not the physician is a specialist in the area upon which

an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to

support or contradict the opinion.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th

Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ noted Dr. Stephen's opinion as to the claimant's occupational and social impairment with reduced reliability and productivity but did not provide any analysis at all, and further failed to disclose what weight he afforded this opinion. More importantly, the ALJ did not explain how these limitations were accounted for in the RFC assessment, or articulate any reasons for rejecting them. It was error for the ALJ to ignore this probative evidence. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted]. This was a significant omission here because limitations in reliability and productivity directly affect a claimant's ability to perform work and because the VE testified that missing three days of work per month would preclude all employment (Tr. 138).

Because the ALJ failed to properly evaluate Dr. Stephen's opinion, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 20th day of September, 2019.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**